UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2007-67 (WOB)

LOIS DAVIS, ET AL.                                                    PLAINTIFF

VS.                                        **OPINION AND ORDER**

KENTON COUNTY CLERKS OFFICE,[1]
ET AL.                                                               DEFENDANTS


        This cases involve allegations by six plaintiffs that defendant Eldridge, the Kenton

County Clerk, in his individual and official capacities, wrongfully terminated them from their

positions with the Kenton County Clerk's Office for political patronage reasons.[2]  This case is

now before the court on defendant Eldridge's motions for partial summary judgment directed

toward two of the plaintiffs:  Virginia Wafford, assistant bookkeeper, and Donna Wood,

supervisor of the Real Estate Department, (Docs. 23 & 24), and plaintiffs' motion to strike the

affidavit of Eldridge (Doc. 35), and motion to strike "Kenton County Fiscal Court's

memorandum on the issue of defendant 'Kenton County'" (Doc. 36).  The parties have responded

to the respective motions.

                                          **FACTS**

        The plaintiffs worked for the Kenton County Clerk's Office.  In early 2006, Bill Aylor,

then the Kenton County Clerk, announced he was not running for re-election.  Aline Summe,

---

        [1]This defendant happens to be the named leading defendant in this matter, but the court
notes it is not a proper defendant.  The matter against Eldridge in his official capacity is an action
against the county.  See footnote 4.

        [2]A companion case, *Summe v. Kenton County*, 2:07-cv-68, is based upon the same facts,
but the plaintiff in that case was the chief deputy clerk.

then the chief deputy county clerk, decided to run for county clerk as the Democratic candidate against defendant Eldridge, the Republican candidate. The plaintiffs, Summe's fellow employees, all supported Summe in her campaign.

In November 2006, Eldridge won the election. On December 15, 2006, Eldridge sent a letter to the plaintiffs,[3] and Summe, stating that he had decided not to continue their employment in 2007. (Doc. 42-4). Eldridge never supervised any of the discharged employees and did not interview them prior to their dismissal. The plaintiffs claim that Eldridge replaced them with campaign supporters and/or contributors and that he retained and/or promoted deputy clerks who supported and/or contributed to his campaign.

**Ms. Wood**

In August 1980, Ms. Wood began working for the Kenton County Clerk's Office in the Lien Department. (Wood depo. pp. 9, 13). Eventually she was promoted to supervisor of the Real Estate Records Department. As the supervisor, she was responsible for maintaining employee time records, approving leave requests, answering questions and making some decisions on issues that came up in her department. (Wood depo. p. 16-17). She testified that "nothing major happened without it going through [the county clerk]." (Wood depo. p. 23).

**Ms. Wafford**

In March 1994, Ms. Wafford began working for the Kenton County Clerk's Office in the Auto Department. (Wafford Depo. pp. 10-13). Six months later, she transferred to the Bookkeeping Department as an assistant to the head bookkeeper, Debbie Lynn. (Wafford Depo. p. 13). Lynn and Wafford were the only two employees in the Bookkeeping Department: Lynn

---

[3]A letter was also sent to another co-worker, but she was ultimately rehired.

supervised Wafford. (Wafford Depo. p. 11). As the assistant bookkeeper, Wafford performed

the daily audits on the money drawers from all the departments, she kept the change money

intact, and she made sure someone made the bank deposit. (Lynn Depo. p. 27). Lynn testified

that Wafford was a good employee, who performed her job well. (Lynn Depo. p. 6).

## ANALYSIS

**A. Motion to Strike Eldridge's Affidavit**.

Plaintiffs seek to strike the affidavit of Eldridge, arguing: (1) it is not based on personal

knowledge; (2) it contradicts his deposition testimony; and (3) it contains hearsay.

The court finds that the affidavit does not contradict Eldridge's deposition testimony.

The court also finds no support for plaintiffs' statement that Eldridge's averment regarding

Wafford's inability to fulfill the role of assistant bookkeeper is hearsay. The court has not

considered this statement, however, because it finds that, even if it were admissible, there is no

factual foundation established for the opinion.

The court further finds that the averments regarding Eldridge's alleged non-political

reasons for not rehiring Wafford and Wood are not relevant to the pending motions because

Eldridge is admitting, for purposes of the motions for summary judgment, that Wafford and

Wood can make a prima facie case for patronage dismissal. Lastly, the court finds that

Eldridge's statements regarding his plans for altering tasks and duties performed by Wafford and

Wood are relevant to the pending motion and are admissible. Thus, the court will grant in part

and deny in part plaintiffs' motion to strike Eldridge's affidavit.

**B. Motion for Summary Judgment.**

**1. The summary judgment standard.**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the nonmoving party's claim. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 & n. 12 (6th Cir. 1989).

Upon the movant's showing of the absence of a genuine issue of material fact, the nonmovant must "set out specific facts showing a genuine issue for trial" in order to defeat summary judgment. Fed. R. Civ. P. 56 (e)(2). Although the court must review the evidence in the light most favorable to the plaintiffs, as the nonmoving party, the plaintiffs are required to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff[s'] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[s]. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**2. Claim of patronage dismissal against Eldridge, in individual and official capacities**.

Wood and Wafford have asserted a § 1983 claim against Eldridge in both his individual and official capacities.

Patronage dismissals, which are dismissals for failure to support a particular party or candidate, are unconstitutional violations of the guarantees of the First Amendment, with certain exceptions. Politically-motivated firings violate the First Amendment by restraining the freedom

4

of the employee to hold whatever political belief he or she desires and to associate with others to advance those beliefs. *Branti v. Finkel*, 445 U.S. 507 (1980); *Elrod v. Burns*, 427 U.S. 347 (1976); *Faughender v. City of North Olmsted, Ohio*, 927 F.2d 909, 912 (6th Cir. 1991). *See also Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75 (1990) (*Elrod* and *Branti* not limited to dismissals).

However, party affiliation may be an acceptable government employment requirement for certain types of positions that are often referred to as "policy-making" or "confidential." *Lane v. City of Lafollette, Tennessee*, 490 F.3d 410, 419 (6th Cir. 2007). Those labels are not determinative. Rather, it is the inherent duties of the particular position that must be examined. *Id.* The Sixth Circuit has stated:

> [T]he test is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." In answering this question, the Court looks not to the position as it was performed by the terminated employee, but instead to the inherent duties of the position, and to the duties that the new holder of that position is expected to perform. . . .
>
> The first step in analyzing a claim of patronage dismissal requires asking whether the party asserting that he was wrongfully terminated has produced sufficient evidence for a jury to find that he was discharged because of his political beliefs or affiliations. If the terminated party makes this showing, then the *burden shifts to the employer to demonstrate that the terminated party's job was one for which political affiliation was an appropriate requirement.*

*Id.* (internal citations omitted) (emphasis added).

The Sixth Circuit has also delineated four categories of government employment that qualify for political patronage exceptions: (1) those that are specifically named in a relevant statute or that are charged with the discretionary authority to carry out the law or other policy of political concern; (2) a position to which discretionary decision-making of the first category has

5

been delegated; (3) confidential advisors to category one or two; and (4) positions filled to balance out party representation. *Caudill v. Hollan,* 431 F.3d 900, 908 (6th Cir. 2005) (*citing McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996)).

Here, Eldridge accepts for purposes of summary judgment that the plaintiffs can make out a prima facie case. Thus, the burden shifts to Eldridge to demonstrate that the jobs of Wafford and Wood were ones for which political affiliation was an appropriate requirement.[4]

In *Caudill*, the Sixth Circuit held that "patronage dismissals of Kentucky deputy county clerks with routine duties violates the [United States] Constitution." *Caudill,* 431 F.3d at 910. Here, Eldridge argues that Wafford and Wood held positions that were not routine clerical duties, but instead fall within the *Branti* exception to the First Amendment right to be free from patronage dismissals. *See Branti v. Finkel*, 445 U.S. 507, 518 (1980).

To determine whether party affiliation is an appropriate requirement for the performance of a public office, "the court must examine two things: (1) 'the inherent duties of the position in question' and (2) 'the duties that the new holder of that position will perform' as envisioned by the newly elected official (the defendant)." *Hoard v. Sizemore*, 198 F.3d 205, 212 (6th Cir. 1999) (citing *Blair v. Meade*, 76 F.3d 97, 100 (6th Cir. 1996) (citing *Faughender*, 927 F.2d at 913)).

**Wood**

Plaintiff Wood was the supervisor of the Real Estate Records Department. As the

---

[4]Eldridge did not argue qualified immunity. As this court noted in its opinion in the companion case, *Summe v. Kenton County*, 07-cv-68, filed contemporaneously herewith, the law in this Circuit is clearly established that the political patronage dismissal of a deputy county clerk, as opposed to the chief deputy county clerk, is unconstitutional. *See Caudill v. Hollan*, 431 F.3d 900, 913 (6th Cir. 2005).

supervisor, she was responsible for maintaining employee time records, approving leave requests, answering questions and making some decisions on issues that arose in her department. (Wood depo. p. 16-17). She testified that "nothing major happened without it going through [the county clerk]." (Wood depo. p. 23).

Eldridge testified in his affidavit that the supervisors of each department were delegated authority to establish working hours, vacations and work assignments within their respective departments. (Doc. 23-3). He also stated:

> [s]ince I intended to increase the efficiency and fiscal responsibility of the office by decreasing the number of employees in the Clerk's Office, I needed Supervisors who were supportive of my plan and would effectively carry out my directives and policies. I also planned to utilize the Supervisors to give me advice on pending matters and serve as my confidants. I wanted Supervisors who would tell me the truth about the perception of the performance of the office and how the public was being treated when it came to the Clerk's Office.

*Id*. at ¶ 8.

Eldridge fails to articulate which *McCloud* category he alleges Wood's supervisory position falls within. It is undisputed that Wood's position does not fall within Category One: one specifically named in relevant law to which discretionary authority with respect to the enforcement of that law or carrying out of some other policy of political concern is granted. There is no evidence that Wood's position falls within Category Two: she had no discretionary authority delegated to her regarding the enforcement of a law or carrying out a political concern. In fact, the only evidence of any authority delegated to Wood is in approving employee leave and assisting employees in answering customers' questions. Wood had no ability to alter an employee's hiring status and there is no evidence of any discretionary authority which would classify her position as a Category Two position.

7

There is also no evidence that Wood falls within Category Three: confidential advisor or a confidential employee who controls the line of communication to Category One or Two employees. Eldridge presents no evidence that Wood spent any time advising the County Clerk, or any other person, on how to exercise statutory or delegated policy-making authority.

The court finds that Wood's position was similar to the position held by manager Skaates in *McCloud v. Testa*, 227 F.3d 424, 429 (6th Cir. 2000), which the Sixth Circuit held did not fall within the *Branti* exception.[5]  Wood's position had little to no policy-making or confidential aspects. She supervised employees in her department, but did not hire or fire them. (Aylor Aff. Doc. 41). Although she had some discretionary authority in managing employees' schedules, this did not make her a policy-maker. *McCloud*, 227 F.3d at 429. Accordingly, the court finds that Wood's position was not one that is subject to the political affiliation exception. Thus, Eldridge's motion for summary judgment on Wood's § 1983 claim, in both his individual and official[6] capacities, will be denied.

_____

[5]*McCloud* also found the following positions fell outside the *Branti* exception:  real estate division administrator, personal property tax division administrator, and estate tax administrator.

[6]A suit against an official in his official capacity is not a suit against the official but a suit against the official's office. *See Mann v. Helmig*, 289 F. App'x 845, 848 (6th Cir. 2008) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Here, a suit against Eldridge in his official capacity is a suit against Kenton County. "Pursuant to a § 1983 suit, "A municipal liability claim ... must be examined by applying a two-pronged inquiry:  (1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and (2) Whether the [municipality] is responsible for that violation.' *Doe v. Claiborne County,* 103 F.3d 495, 505-06 (6th Cir. 1996). In satisfying the second prong of this inquiry, 'A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury.' *Ellis v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978))." *Mann,* 289 F. App'x at 848.
Here, Eldridge sought summary judgment arguing only that Wood's position is one for which patronage dismissal is permitted. The court having found that Wood's position is not

**Wafford**

Plaintiff Wafford was the assistant to the head bookkeeper, Debbie Lynn. (Wafford Depo. p. 11). Wafford and Lynn were the only two people that worked in the Bookkeeping Department. (Wafford Depo. p. 11). As the assistant bookkeeper, Wafford performed the daily audits on the money drawers from all the departments, she kept change money intact, and she made sure someone made the bank deposit. (Lynn Depo. p. 27). There is no evidence that Wafford performed any discretionary functions or had any policy making or confidential aspects to her job. Eldridge asserts in his affidavit that he planned to utilize the bookkeeping employees to advise him on fiscal matters and assist him in preparing the budget and to act as his confidants.

The only *McCloud* category at issue for Wafford is Category Three: confidential advisor or confidential employee who controls the line of communication with other category employees. Eldridge, however, does not present any evidence that Wafford spent any time, let alone a significant portion of time, advising on the exercise of statutory or delegated policy-making authority. There is also no evidence that she controlled any lines of communication to any category employee. The evidence is that Wafford held a clerical position in the bookkeeping department: she counted the money from each department, kept change, and made bank deposits.

Former Kenton County Clerk Aylor stated, in his affidavit, that Wafford's duties involved no discretionary authority. He testified that she did not act as a liaison for him with the Treasurer to the Fiscal Court. He further stated that he prepared his own budgets, and any reports Wafford may have helped prepare consisted of information that was a matter of public record.

---

subject to the *Branti* exception and Eldridge failing to make any argument regarding the second prong of the municipal liability inquiry, Eldridge's motion for summary judgment on the official capacity claim will be denied.

Further, Eldridge's claim that he intended to transform Wafford's position into one of a confidential advisor is an issue for the jury to decide.  The Sixth Circuit has held that "pretextual reorganization will not be condoned."  *McCloud*, 227 F.3d at 430.  The court finds that it is an issue of fact as to whether Eldridge had a good faith belief that, in order to implement his policies, it was necessary to transform Wafford's clerical position into a confidential position. *Id.*

For the foregoing reasons, the court finds that there is no evidence that Wafford's position was anything more than clerical.  Thus, Eldridge has not established as a matter of law that an assistant bookkeeper is a position subject to political patronage dismissal, and his motion for partial summary judgment will be denied on Wafford's § 1983 claim against him in both his individual and official[7] capacities.

### 3.  Tort of outrage claim against Eldridge.

Eldridge argues that he is entitled to summary judgment on these two plaintiffs' claim for tort of outrage because: 1) they have not set forth facts that give rise to the "outrageous and intolerable" behavior required; 2) there is no evidence that the acts were committed with the sole purpose of causing extreme emotional distress; and 3) there no evidence that the plaintiffs suffered from extreme emotional distress.  The plaintiffs did not respond to Eldridge's argument.

In Kentucky, a claim for the tort of outrage requires a plaintiff to establish the following elements: "1) the wrongdoer's conduct must be intentional or reckless; 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; 3) there must be a causal connection between the wrongdoer's conduct and the

---

[7] See footnote 6.

10

emotional distress; and 4) the emotional distress must be severe." *Humana of Kentucky, Inc. v. Seitz,* 796 S.W.2d 1, 2-3 (Ky. 1990) (citing *Craft v. Rice,* 671 S.W.2d 247, 249 (Ky. 1984)).

Here, there is no evidence that Eldridge's conduct was so outrageous and intolerable that it offends the generally accepted standards of decency and morality. There is also no evidence of any severe emotional distress. Neither Wood nor Wafford claim to have sought medical treatment as a result of the emotional distress caused by their termination. Ms. Wood testified that she takes medication for sleeplessness and high blood pressure, which she attributes to her dismissal from the Clerk's Office. She has not, however, presented any evidence to establish causation. Thus, the court will grant Eldridge's motion for summary judgment on the claim of Wood and Wafford for the tort of outrage.

### C. Motion to Strike Memorandum

The plaintiffs seek to strike a document filed by the Kenton County Fiscal Court entitled "Memorandum on the Issue of Defendant 'Kenton County,'" arguing the pleading is improper and not contemplated by the federal rules. The pleading to which the plaintiffs object sets forth the defendant's understanding that Kenton County has been substituted for the Kenton County Fiscal Court, and that the defense filed by Eldridge in his official capacity is the defense for Kenton County. The court finds that the parties are proceeding consistent with this court's previous orders. Therefore, the motion will be denied.

Therefore, the court, having heard counsel and being advised,

**IT IS ORDERED** as follows:

1. That defendant Eldridge's motions for partial summary judgment directed toward plaintiffs Virginia Wafford and Donna Wood (Doc. 23, 24) be, and they hereby are, **denied in**

11

**part** as to the § 1983 claim and **granted in part** as to the tort of outrage claim;

2. That plaintiffs' motion to strike the affidavit of Eldridge (Doc. 35) be, and it hereby is, **granted in part** as to the non-political reasons for his refusal to rehire the plaintiffs and **denied in part** as to Eldridge's statements regarding his plans for altering the duties of the positions at issue;

3. That plaintiffs' motion to strike Kenton County Fiscal Court's memorandum on the issue of Kenton County (Doc. 36) be, and it hereby is, **denied**;

4. This case be, and is hereby, **SET FOR A FINAL PRETRIAL CONFERENCE** on **THURSDAY, DECEMBER 10, 2009 at 1:00 p.m.**  The court's standard final pretrial order shall enter concurrently herewith and

(5) This case be, and is hereby, **SET FOR A JURY TRIAL** on **MONDAY, JANUARY 4, 2010 AT 10:00 A.M.**

This 16th day of June, 2009.



**Signed By:**

**_William O. Bertelsman_** WOB

**United States District Judge**

12